**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
Covington Division**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 11** |
| APPLEILLINOIS, L.L.C. | : | **Case No. 13-20723** |
| | : | **Judge Tracey N. Wise** |
| Debtor | : | |
| _____ | : | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for resolution of whether Applebee's International, Inc. ("Franchisor") is entitled to recover attorney fees in the amount of $278,268.60 ("Attorney Fees"). Franchisor asserts the Attorney Fees constitute part of the cure amount due to it upon Debtor's assumption and assignment of certain franchise agreements between the Franchisor and Debtor. For the reasons set forth below, the Court finds that the Franchisor is not entitled to recover the Attorney Fees from the Debtor's estate.

**PROCEDURAL BACKGROUND AND FACTS**

The Debtor, the operator of thirty-three Applebee's restaurants, filed its chapter 11 petition on April 22, 2013. Through the bankruptcy, the Debtor sought to sell its restaurants via an auction process. An order ("Procedures Order") [Doc. 143] establishing procedures to conduct the auction and procedures for assumption and assignment of executory contracts and unexpired leases was entered on May 9, 2013.

Pursuant to the Procedures Order, the Debtor filed a notice and a supplement thereto ("Notice") [Docs. 166 & 210] identifying its executory contracts and unexpired leases and the proposed cure amounts in the event of assumption and assignment of those agreements. The Debtor reserved its rights to identify which contracts or leases would actually be assumed and assigned pending the outcome of the auction. The Notice identified the thirty-three franchise agreements and related software licenses between Debtor and Franchisor as executory contracts that might be assumed and assigned or rejected. The proposed cure related to the thirty-three

franchise agreements was an unspecified amount for "Unknown Remodeling Obligations" [Doc. 166, Ex. B, Item 34], and the proposed cure amount for the related software licenses was $4,827 [Doc. 210, Ex. B, Item 2].   In a response, the Franchisor reserved its rights to object to the Notice pending the outcome of the auction at which time the identity of the purchaser and specific contracts to be assumed and assigned would be known ("Limited Objection") [Doc. 21].

The auction was held on June 5, 2013, and RMH Illinois, LLC ("RMH") was identified as the successful bidder [Doc. 228].   RMH agreed to purchase fifteen of the restaurants ("Sold Restaurants") and intended to operate them as Applebee's restaurants.   The second amended asset purchase agreement ("Asset Purchase Agreement") [Doc. 247, Ex. A] between Debtor and RMH was approved by an order ("Sale Order") [Doc. 247] entered on June 14, 2013.   The Asset Purchase Agreement and the Sale Order provided for the payment to Franchisor of cure amounts, if any, to which it might be entitled under 11 U.S.C. § 365(b)(1).   Sale Order ¶¶ 35 & 16; Asset Purchase Agreement ¶¶ 2.5 & 8.4.   Those documents did not identify any defaults entitling Franchisor to any cure payments.

The Asset Purchase Agreement contemplated that the Debtor, Debtor's principal, the Franchisor, RMH, and affiliates of RMH, would enter into an Assumption and Assignment Consent Agreement ("Consent Agreement") and that the Debtor would obtain Court approval of that agreement [Asset Purchase Agreement ¶ 8.2].   By motion filed June 10, 2013 [Doc. 236], the Debtor sought approval of the Consent Agreement [Doc. 236-2] in which the Franchisor agreed to Debtor's assumption of and assignment to RMH of the franchise agreements for the Sold Restaurants ("Assumed Franchise Agreements").   It is undisputed that the Debtor was not in default under any of the franchise agreements prepetition.   Paragraph 6 of the Consent Agreement refers to an undefined "cure amount" for the Assumed Franchise Agreements but does not identify the basis for any such cure:

> Pursuant to the terms and conditions of the Purchase Agreement, Sale Order and this Agreement, upon the occurrence of the Closing Date, the Franchisee shall (i) assume the Existing Franchise Agreements for the Purchased Restaurants . . . and assign

such Assumed Agreements[1] to the New Franchisee and (ii) pay the Franchisor the cure amounts related to such Assumed Agreements . . . on the Closing Date pursuant to section 365(b)(1) of the Bankruptcy Code, which Cure Amounts shall include . . . (b) *a cure amount for the Assumed Franchise Agreements.*

Consent Agreement ¶ 6 (emphasis added).   The Consent Agreement further provided for the Franchisor to receive from RMH a fee ("Transfer Fee") in the amount of $2,500 for every restaurant purchased by RMH pursuant to the Asset Purchase Agreement.   Consent Agreement ¶ 7.

An agreed order ("Consent Agreement Order") [Doc. 275] was entered on June 27, 2013, approving and authorizing the Debtor to enter into the Consent Agreement.   The Consent Agreement Order further provided that certain royalty payments attributable to prepetition operations which became due post-petition would be allocated to and paid by the Debtor from the sale proceeds. In addition, to facilitate the closing, the Debtor and Franchisor agreed to reserve for resolution at a later time, the issue of whether Franchisor was entitled to recover its attorney fees and expenses incurred in connection with the Assumed Franchise Agreements.   Consent Agreement Order ¶ 3. The closing occurred on June 27, 2013.

Via an odd procedure, the Debtor brought the attorney fee issue before the Court by filing an objection ("Objection") [Doc. 336] stating that the "[Franchisor] has requested that the Debtor make purported 'cure' payments to it in the amount of *$278,268.60* in connection with the Debtor's transfer of its franchise agreements with Applebee's."   Objection 1.   The record does not contain a formal request by the Franchisor for the approval of the fees nor any itemization of the amount of the fees or services to which they relate.   The Official Committee of Unsecured Creditors joined in the Debtor's Objection, and the Franchisor filed a timely response ("Response") [Doc. 342].   A hearing was held on September 10, 2013.   Thereafter, the Court ordered and the parties filed a joint stipulation ("Joint Stipulation") [Doc. 399] placing into the record what they deemed to be the relevant provisions of the Assumed Franchise Agreements.

---

[1] "Assumed Agreements" in the Consent Agreement refers to the Assumed Franchise Agreements and the related software licenses.

## JURISDICTION

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).   The parties agree that the issue of the Franchisor's entitlement to its claimed attorney fees is ripe for decision on the record before the Court.

## LAW AND ANALYSIS

Subject to court approval, the Bankruptcy Code permits a debtor to assume or reject an executory contract.   11 U.S.C. § 365(a).   There is no dispute that the Assumed Franchise Agreements are executory contracts.

The Bankruptcy Code further provides that a debtor may not assume an executory contract under which the debtor has defaulted, unless, at the time of assumption, the debtor (A) cures all defaults or provides adequate assurance that it will promptly cure such defaults, (B) compensates or provides adequate assurance that it will promptly compensate the other party for any pecuniary loss resulting from any default, and (C) provides adequate assurance of future performance under the contract.   11 U.S.C. § 365(b)(1).

Applicability of § 365(b)(1):

The majority of courts have found that § 365(b)(1)(B) does not create an independent right to an award of attorney fees.   *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.),* 167 F.3d 843, 849 (4th Cir. 1999); *In re Mid Am. Oil, Inc.*, 255 B.R. 839, 840-41 & n.1 (Bankr. M.D. Tenn. 2000) (collecting and analyzing cases).[2]   "The actual pecuniary loss suffered by a creditor [under § 365(b)(1)(B)] is that amount which would be recovered under state law outside of bankruptcy."   *In re Ryan's Subs, Inc.*, 165 B.R. 465, 468 (Bankr. W.D. Mo. 1994).

---

[2] *Contra In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989) (§ 365(b)(1)(B) does create a separate right, and finding that recovery by lessor of attorney fees is "activated by a showing of loss resulting from or in connection with a default.") (citing *In re Westworld Cmty. Healthcare, Inc.*, 95 B.R. 730, 733 (Bankr. C.D. Calif. 1989)).   The majority of courts reject the "*Westworld Community* decision and [hold] that, section 365 does not, and was not intended to, give creditors greater rights than they would have had under the contract or lease which gave rise to the debt."   *In re Mid Am. Oil, Inc.*, 255 B.R. at 841 n.1 (citation omitted) (internal quotation marks omitted).

Thus, whether attorney fees are awarded depends not on whether § 365(b)(1)(B) applies, but on relevant state law and whether the terms of the Assumed Franchise Agreements provide for the payment of such fees. *Shangra-La*, 167 F.3d at 848-49. Franchisor may collect the Attorney Fees as a pecuniary loss under § 365(b)(1)(B) "if such monies were expended as the result of a default under the contract . . . between the parties *and* are recoverable under the contract and applicable state law." *Mid Am. Oil,* 839 B.R. at 840 (emphasis added).

Applicable State Law:

The parties agree that Kansas law applies to the construction and interpretation of the Assumed Franchise Agreements. Kansas law recognizes and enforces a contractual agreement allowing a party to recover attorney fees. *Enter. Bank & Trust v. Barney Ashner Homes, Inc.*, 300 P.3d 115, 2013 WL 1876293, at *19 (Kan. App. 2013) (unpublished table decision) (citing cases). "The party requesting attorney fees and costs bears the burden of establishing entitlement to such an award." *Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.*, 243 P.3d 1106, 1109 (Kan. App. 2010).

Terms of the Assumed Franchise Agreements:

No uniform rule or analysis can characterize assumption motions for purposes of the attorney fee analysis. It is the contractual language which must be interpreted and applied, and if ambiguous, the parties' intent. *Carrothers Constr. Co., L.L.C. v. City of South Hutchinson*, 207 P.3d 231, 239 (Kan. 2009). Thus, the analyses in the myriad cases cited by the parties in support of their respective arguments are only as persuasive as the similarity of the contractual language at issue in those cases to the contractual provisions at issue here. The Assumed Franchise Agreements provide:

> 19.3   In the event that any party to this Agreement initiates any legal proceeding to construe or enforce any of the terms, conditions and/or provisions of this Agreement, including, but not limited to, its termination provisions and its provisions requiring Franchisee to make certain payments to Franchisor incident to the operation of the Restaurant, or to obtain damages or other relief to which any such party may be entitled by virtue of this Agreement, *the prevailing party or parties shall be paid its reasonable attorneys' fees and expenses by the other party or parties*. . . .

Joint Stipulation 1 (emphasis added).

Franchisor goes to great lengths to explain (1) the necessity of incurring legal fees to protect its interests under the Assumed Franchise Agreements in the bankruptcy proceeding; (2) the efforts it made to work with the Debtor in Debtor's "lightning quick sales process;" and (3) Franchisor's success in achieving its litigation goals.   Accepting each of these contentions as true however, does not, without more, entitle the Franchisor to attorney fees under the terms of the Assumed Franchise Agreements.

Paragraph 19.3 requires: (1) a legal proceeding; (2) to construe or enforce provisions of the Assumed Franchise Agreements, including provisions requiring payments to Franchisor incident to the restaurant operations; and (3) the entity requesting the attorney fees must be the "prevailing party."

The Court has no difficulty finding that a bankruptcy proceeding and a contested matter therein to assume an executory contract pursuant to § 365(a) constitute a "legal proceeding" within the meaning of the parties' contract.   *E.g., In re Crown Books Corp.,* 269 B.R. 12, 16 (Bankr. D. Del. 2001). However, the Court finds that there was no action to construe or enforce the provisions of the Assumed Franchise Agreements; and more importantly, the Franchisor was not the prevailing party within the meaning of the Assumed Franchise Agreements.

The Franchisor states that it filed the Limited Objection to the Notice to enforce the terms of the Assumed Franchise Agreements.  This misconstrues the Limited Objection.  The Franchisor conceded that the Debtor could not provide the exact amount of the cure at the time the Notice was filed, "because [Debtor] does not know what Franchise Agreements will ultimately be assumed and assigned[ ], and therefore must modify the Cure Notice to reflect a precise calculation of the cure amount *at the appropriate time.*"   Limited Objection ¶ 11 (emphasis added).   The Franchisor further stated that it "proposes working with the Debtor to establish such cure amounts after approval of the Sale, and proposes that if the parties do not agree on a cure amount . . . that the Court hold a hearing

6

. . . to determine such cure amounts." Limited Objection ¶ 12. As noted above, the Limited

Objection merely reserved Franchisor's rights to object to the assumption and assignment of its

franchise agreements pending the outcome of the auction.

The Notice and the Franchisor's Response was not in and of itself a legal proceeding to

enforce the Assumed Franchise Agreements. It was a legal proceeding to transfer the agreements.

Of course, the terms of the agreements could not be ignored in this effort, but the legal proceeding

was not to construe or enforce the agreements. That amounts to be paid in connection with the

transfer had to be identified and documented does not change the nature of the proceedings. There

were no prepetition defaults. Moreover, the Assumed Franchise Agreements specifically addressed

Franchisor's entitlement to a transfer fee. As stipulated by the parties, paragraph 12.9 of the subject

agreements provides:

> In connection with any request for Franchisor's approval of a proposed Transfer
> pursuant to this Section 12, the parties to the proposed Transfer shall pay Franchisor a
> nonaccountable fee to defray the actual cost of review and the administrative and
> professional expenses related to the proposed Transfer and the preparation and
> execution of documents and agreements, up to a maximum of two thousand five
> hundred dollars ($2,500).

Joint Stipulation 2. As noted above, consistent with this provision, both the Consent Agreement and

Asset Purchase Agreement required payment of the Transfer Fee as a condition of closing. It is

undisputed that RMH paid the Franchisor the Transfer Fee in the total amount of $37,500.

Finally, the Court further finds that the Franchisor is not the prevailing party within the meaning

of the parties' contract. "Prevailing party" is not defined by the Assumed Franchise Agreements.

Looking to other sources, a "prevailing party" is a "party in whose favor a judgment is rendered,

regardless of the amount of damages awarded." BLACK'S LAW DICTIONARY 1232 (9th ed. 2009); *see*

*also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S.

598, 603, 121 S. Ct. 1835, 1839, 149 L. Ed. 2d 855 (2001) ("This view that a 'prevailing party' is one

who has been awarded some relief by the court can be distilled from our prior cases."); *Szoboszlay v.*

*Glessner*, 664 P.2d 1327, 1333 (Kan. 1983) ("With respect to the specific question of attorney fees, it

has been stated a prevailing party is the person who has an affirmative judgment rendered in his favor

at the conclusion of the entire case."). Where neither party is the "prevailing party," an award of

attorney fees may not be appropriate. *Alliance Platforms, Inc. v. Behrens*, 305 P.3d 30, 34 (Kan.

App. 2013).

The Franchisor argues that it was the successful party because it reached its goals to (i)

protect and exercise its rights under § 365; (ii) obtain an acceptable consent agreement from the

Debtor, Debtor's primary equity holder, and the ultimate purchaser; and (iii) obtain full payment of its

royalties and transfer fees. Response 10-11. The Debtor, however, was equally or more

successful in being able to assume and assign the Assumed Franchise Agreements, particularly

where no prepetition default existed. *See Mid Am. Oil*, 255 B.R. at 844 ("even if debtor was in

default, the debtor was ultimately the successful party in assuming the lease").

Franchisor takes the position that it should not be penalized because the parties were able to

resolve all of the "cure" issues. The Court agrees; however, neither should the Debtor be penalized.

It is the contractual language, not the parties' conduct in the bankruptcy, which controls the outcome

here.

Finding that the Franchisor has failed to establish an entitlement to an award of attorney fees,

it is unnecessary for this Court to address the final issue as to the reasonableness of those fees.

**CONCLUSION**

**IT IS HEREBY ORDERED** that the Debtor's Objection [Doc. 336] is sustained. Franchisor's

claim for Attorney Fees is disallowed.

*~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~*
***The affixing of this Court's electronic seal below is proof this document***
***has been signed by the Judge and electronically entered by the Clerk in the***
***official record of this case.***



**Signed By:**
***Tracey N. Wise***
**Bankruptcy Judge**
**Dated: Friday, January 24, 2014**
**(tnw)**